UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:16-CV-00135-HBB

TONYA G. JOHNSON                                                                         PLAINTIFF

VS.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security                                       DEFENDANT

**MEMORANDUM OPINION
AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Tonya G. Johnson ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 11) and Defendant (DN 14) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 9). By Order entered October 24, 2016 (DN 10), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

Plaintiff protectively filed an application for Disability Insurance Benefits on March 11, 2013 (Tr. 24, 244). Plaintiff alleged that she became disabled on January 23, 2013, as a result of chronic pain from degenerative disc disease in the neck and back, neuropathy and limitation of movement in the left side, obesity, chronic diarrhea, sleep disorders, depression and anxiety, short-term memory loss, high cholesterol, and persistent bladder infections with incontinence (Tr. 24, 294-95). From Lexington, Kentucky, Administrative Law Judge Karen R. Jackson ("ALJ") conducted a video hearing on November 4, 2014, and a supplemental video hearing on April 16, 2015 (Tr. 24, 45, 83). Plaintiff and her counsel, Richard Burchett, participated in both video hearings from Campbellsville, Kentucky (Id.). Laura Lykins, an impartial vocational expert, attended but did not testify during the November 4, 2014 video hearing (Tr. 24, 83). Linda Taber, an impartial vocational expert, attended and testified during the supplemental hearing on April 16, 2015 (Tr. 24, 45).

In a decision dated May 26, 2015, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 24-37). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 23, 2013 the alleged onset date (Tr. 26).

At the second step, the ALJ determined that Plaintiff has the following "severe" impairments: lumbar and cervical degenerative disc disease, minimal degenerative joint disease/bursitis of the left hip, obesity, depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder (Id.). The ALJ also determined although Plaintiff's hypertension, history of chronic cystourethritis, and bilateral wrist osteoarthritis are medically determinable

2

impairments, they are "non-severe" because the evidence fails to demonstrate that they cause more than minimal limitations (Tr. 27). Additionally, the ALJ determined that Plaintiff's chronic diarrhea is not a medically determinable impairment (Id.).

At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.). More specifically, the ALJ found from the totality of the medical evidence that Plaintiff's back condition did not meet Listing 1.04, her hip condition did not rise to the level of severity required by Listing 1.02, and her mental impairments do not meet or medically equal the criteria of Listings 12.04 and 12.06 (Tr. 28-29).

At the fourth step, the ALJ made the following residual functional capacity finding:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can lift only 20 lbs. occasionally and 10 lbs. frequently. She can stand/walk for six hours in an 8-hour day. She can sit for six hours in an 8-hour day. She can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. She can only occasionally stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to vibration and all exposure to hazards such as unprotected heights or dangerous machinery. She can only perform simple, routine work tasks. She can maintain attention and concentration for two-hour segments during an 8-hour workday. She can adapt to gradual changes in a routine work environment. She can interact frequently with supervisors and coworkers, but only occasionally with the general public.

(Tr. 29). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable perform any of her past relevant work (Tr. 35).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert

(Tr. 35-36). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 36). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from January 23, 2013 through the date of the decision, May 26, 2015 (Tr. 36-37).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 18, 20). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the

Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step. The ALJ relied on the testimony of the vocational expert to find that Plaintiff is capable of making a successful adjustment to other work that exist in significant numbers in the national economy (Tr. 36).

Discussion

A

Plaintiff disagrees with Finding No. 3 because the ALJ failed to consider her left shoulder condition in the severe impairment analysis (DN 11 PageID # 910-11 citing Tr. 26-27). Plaintiff asserts that her left shoulder diagnoses includes osteoarthritis, subacromial bursitis, and tendinitis of the superaspinatus, infraspinatus, and teres minor muscles (Id. citing Tr. 371, 697, 788, 814, 815). Plaintiff contends that the conditions were documented by decreased shoulder motion and tenderness between October 2013 and January 2015; her left shoulder being lower than the right shoulder (Tr. 696, 701, 706, 711, 716, 722, 727, 731, 737, 742, 747, 752, 757, 763, 775, 779, 783, 788, 792, 794, 806, 810, 814); and shoulder injections in March and June 2014 (Tr. 770, 784). Plaintiff asserts that the treating physician, who performed the examinations and injections, opined that her capacity to lift objects was severely limited and that she had decreased reaching abilities

(Id. citing Tr. 851). Plaintiff contends that such limitations would impose a significant reduction in the types of physical work activity that she can perform (Id.).

Defendant acknowledges that the ALJ did not assess whether Plaintiff's left shoulder condition was a "severe" impairment within the meaning of the regulations (DN 14 PageID # 925-26). Defendant argues the ALJ's omission does not constitute reversible error because the ALJ evaluated all of Plaintiff's alleged impairments through the remaining steps (DN 14 PageID # 925-26 citing Maziarz v. Sec'y of Health & Human Servs., 837 F2d 240, 244 (6th Cir. 1987)).

Finding No. 3 addresses the second step of the sequential evaluation process (Tr. 26). At that step, a claimant must demonstrate she has a "severe" impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam). To satisfy this burden, the claimant must show she suffers from a "medically determinable" physical or mental condition that satisfies the duration requirement (20 C.F.R. §§ 404.1509, 416.909) and "significantly limits" her ability to do one or more basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c); Social Security Ruling 96-3p; Social Security Ruling 96-4p; Higgs, 880 F.2d at 863.

To satisfy the "medically determinable" requirement the claimant must present objective medical evidence (i.e., signs, symptoms, and laboratory findings) that demonstrates the existence of a physical or mental impairment. 20 C.F.R. § 416.908; Social Security Ruling 96-4p, 1996 WL 374187, at *1 (1996); Social Security Ruling 96-3p, 1996 WL 374181, at *2 (1996). Thus, symptoms and subjective complaints alone are not sufficient to establish the existence of a "medically determinable" physical or mental impairment. Social Security Ruling 96-4p, 1996 WL 374187, at *1.

7

Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. § 416.921(b). An impairment will be considered non-severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 90 (6th Cir. 1985) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)).

When Plaintiff applied for benefits, she alleged that she became disabled on January 23, 2013 as a result of a number of health conditions, but did not identify a shoulder condition (Tr. 294). However, during the administrative hearing on November 4, 2014, Plaintiff testified that her neck and shoulder conditions limit what she is able to do with her left arm (Tr. 86). Further, during the supplemental administrative hearing on April 16, 2015, Plaintiff testified about her left shoulder and the treatment administered by Dr. Nair for that condition (Tr. 53-54, 59).

Medical records from Kentuckiana Pain Specialists indicate from February 2012 through March 2013, Dr. Nair treated Plaintiff for neck pain that radiated down her left shoulder and lumbar pain (Tr. 369- 465). Notably, during this time frame the musculoskeletal examinations of Plaintiff's shoulder were normal and Dr. Nair did not express a diagnostic impression with regard to Plaintiff's left shoulder (Id.). The medical records indicate during an office visit on April 23, 2013, the musculoskeletal examination revealed left shoulder subacromial bursitis and Dr. Nair began treating that condition (Tr. 839-42). From May 17, 2013 through January 2015, Plaintiff consistently complained of left shoulder pain and Dr. Nair treated her for subacromial bursitis (Tr.

693-838). Beginning on October 30, 2013, musculoskeletal examinations of Plaintiff's left shoulder revealed tenderness to palpitation over the subacromial left side, tenderness over supraspinatus and infraspinatus, teres minor tendinitis, and decreased range of motion (Tr. 693-814). October 30, 2013, appears to be the first time that Dr. Nair administered a left shoulder injection to address the pain and other symptoms Plaintiff experienced as a result of her shoulder condition (Tr. 815). On March 7, 2014, Dr. Nair supplemented his diagnosis to include left shoulder osteoarthritis (Tr. 786-88). On March 13, June 11, and September 17, 2014, Dr. Nair administered injections to address Plaintiff's left shoulder condition (Tr. 732-33, 770, 784). Records from Central Kentucky Primary Care indicate from November 2008 through February 2013, Plaintiff sought treatment for left shoulder pain (Tr. 466-534).

On April 23, 2013, a non-examining state agency medical consultant reviewed the medical record and rendered an opinion regarding Plaintiff's physical limitations (Tr. 107-117). The medical consultant did not identify Plaintiff's shoulder condition as a medically determinable impairment in spite of acknowledging that a musculoskeletal examination revealed left subacromial bursitis (Tr. 111) and finding partially credible Plaintiff's reports of pain in her left shoulder (Tr. 113). The medical consultant expressed an opinion regarding Plaintiff's physical limitations that focused on the limitations imposed by Plaintiff's lumbar spine condition (Tr. 111, 113-15).

On August 8, 2013, a different non-examining state agency medical consultant reviewed the medical record and rendered an opinion regarding Plaintiff's physical limitations (Tr. 120-31). Although the medical consultant did not acknowledge that musculoskeletal examinations had revealed left subacromial bursitis, the consultant did find partially credible Plaintiff's reports of

9

pain in her left shoulder (Tr. 124-26). This medical consultant also expressed an opinion regarding Plaintiff's physical limitations that focused on the limitations imposed by Plaintiff's lumbar spine condition (Tr. 126-28). In sum, despite what Dr. Nair's musculoskeletal examinations of Plaintiff's left shoulder revealed during the time frame April through August 2013, the non-examining state agency medical consultants failed to determine whether the shoulder condition constituted a medically determinable impairment that satisfies the duration requirement (20 C.F.R. § 404.1509) and significantly limits Plaintiff's ability to perform basic work activities. 20 C.F.R. §404.1520(a)(4)(ii) and (c); Social Security Ruling 96-3p; Social Security Ruling 96-4p.

Dr. Nair prepared a medical source statement regarding the limitations imposed by Plaintiff's lumbar spine (Tr. 849-54). However, he did not express an opinion regarding limitations imposed by Plaintiff's left shoulder condition.

The undersigned recognizes that there is no medical opinion in the record that specifically expresses limitations imposed by Plaintiff's left shoulder condition. Notwithstanding, Dr. Nair's musculoskeletal examinations of Plaintiff's left shoulder appears to be substantial evidence in the record to support a finding that Plaintiff suffers from a medically determinable condition. Indeed, a perfunctory review of the record reveals at least thirty-one separate medical documents reflecting Plaintiff's shoulder condition. The sheer volume of medical records in combination with the fact that the Plaintiff mentioned her shoulder condition at both administrative hearings should have been more than sufficient to put the ALJ on notice of the need to address this condition at the second step in the sequential evaluation process. Yet, the ALJ failed to mention this condition and did not make any findings addressing whether Plaintiff has a medically determinable

impairment and whether it is "severe" within the meaning of the regulations as required by 20 C.F.R. § 404.1520, Social Security Ruling 96-3p, and Social Security Ruling 96-4p.

These second step errors alone would be an insufficient basis to reverse and remand the ALJ's decision. Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987). So long as an Administrative Law Judge finds that other impairments are severe, continues on with the sequential evaluation process, and considers the limitations and restrictions imposed by all of the claimant's impairments (severe and non-severe) in the remaining steps, the error is harmless. *See* Id.; Mish v. Comm'r of Soc. Sec., No. 1:09-CV-753, 2011 WL 836750, at *1-2 (W.D. Mich. Mar. 4, 2011); Stephens v. Astrue, No. 09-55-JBC, 2010 WL 1368891, at *2 (E.D. Ky. Mar. 31, 2010); Meadows v. Comm'r of Soc. Sec., No. 1:07cv1010, 2008 WL 4911243, at *12-13 (S.D. Ohio Nov.13, 2008); Jamison v. Comm'r of Soc. Sec., No. 1:07-CV-152, 2008 WL 2795740, at *8-9 (S.D. Ohio July 18, 2008); Tuck v. Astrue, No. 1:07-CV-00084-EHJ, 2008 WL 474411, at *3 (W.D. Ky. Feb. 19, 2008).

Here, the ALJ found that Plaintiff has the following severe impairments: lumbar and cervical degenerative disc disease, minimal degenerative joint disease/bursitis of the left hip, obesity, depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder (Tr. 26). The ALJ continued with the sequential evaluation process, but the administrative decision does not even mention Plaintiff's shoulder condition, let alone address whether it imposed any limitations on Plaintiff's residual functional capacity (Tr. 29-35). Again, the sheer volume of medical records in combination with the fact that the Plaintiff mentioned her shoulder condition at the administrative hearings should have been more than sufficient to put the ALJ on notice that the residual functional capacity assessment should account for any associated limitations. During the

supplemental administrative hearing[1], the ALJ did not pose a hypothetical question to the vocational expert that included any limitation on Plaintiff's use of her left shoulder (Tr. 74-79). At the fifth step in the sequential evaluation process, the ALJ relied on the vocational expert's testimony to find that plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 35-36).

In sum, there is no indication in the record that the ALJ considered the limitations and restrictions imposed by all of Plaintiff's impairments, both severe and non-severe, in the remaining steps of the sequential evaluation process. The Court concludes that the Mazairz harmless-error standard does not apply on these facts because it is not evident that the ALJ considered Plaintiff's entire medical record. *See* Mish, 2011 WL 836750, at *2 (distinguishing Mazairz, reversing, and remanding because plaintiff's fibromyalgia and obesity were not identified as "severe" at the second step, and the ALJ failed to consider them at the other steps in the sequential evaluation process); Stephens, 2010 WL 1368891, at *2 (distinguishing Maziarz, reversing, and remanding because there was no evidence that the plaintiff's mental impairments, which were not identified by the ALJ as "severe" at the second step, were considered at the fourth step, which was "devoid of any explicit reference to those impairments"); Jamison, 2008 WL 2795740, at *8–9 (distinguishing Maziarz, reversing, and remanding because there was no evidence that the ALJ considered the plaintiff's cardiac impairment, which was not identified as "severe" at the second step, at other steps of the sequential evaluation process); Tuck, 2008 WL 474411, at *7–8 (distinguishing Maziarz, reversing, and remanding because the ALJ failed to determine whether the plaintiff's depression was a "severe" impairment and failed to consider the limitations imposed

---

[1] During the initial administrative hearing the ALJ elected not to pose hypothetical questions to the vocational expert because of the need to further develop the record regarding Plaintiff's physical and mental conditions (Tr. 84-105).

by the plaintiff's depression and the vocational effect of those limitations). Therefore, the undersigned concludes that remand is required for further development and clarification of Plaintiff's medically determinable impairments at each step of the sequential evaluation process.

Sentence four of 42 U.S.C. § 405(g) authorizes a post judgment remand. Under sentence four, the Court makes a final judgment (e.g., affirming, reversing, or modifying the final decision of the Commissioner) and remands the case to the Commissioner with instructions to consider additional evidence and/or conduct additional proceedings to remedy a defect in the original proceedings. Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 175 (6th Cir. 1994). For the reasons set forth above the final decision of the Commissioner will be reversed and this matter remanded to the Commissioner, pursuant to sentence four, with instructions to conduct additional proceedings to remedy the defects in the original proceedings that are identified above.

B

The undersigned is aware that Plaintiff has raised other claims with regard to the ALJ's findings regarding whether Plaintiff meets Listing 1.04, her residual functional capacity, and whether there are jobs that exist in significant numbers in the national economy that she can perform (DN 11). In light of the above conclusion, the undersigned deems it unnecessary to address those other claims. Further, the ALJ will have the opportunity to remedy those issues when he conducts additional proceedings to remedy the above identified defect in the original proceedings.

ORDER

For the foregoing reasons, the undersigned concludes that the final decision of the Commissioner does not comport with applicable law.

**IT IS HEREBY ORDERED** that the final decision of the Commissioner be **REVERSED** and this matter is **REMANDED**, pursuant to 42 U.S.C. § 405(g), to the Commissioner for further proceedings.

Copies:   Counsel